UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BETTYANN JONES,<br><br>                        Plaintiff,<br><br>              v.<br><br>MARK ZUCKERBERG and KEVIN EDWARDS,<br><br>                      Defendants. | Case No. 1:21-cv-20163-RBK-AMD<br><br>**Motion Day:**<br>**February 7, 2022** |

**DEFENDANT MARK ZUCKERBERG'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S CLAIM AGAINST HIM WITH PREJUDICE**

Mark S. Pincus
PINCUS LAW LLC
444 Madison Avenue, 4th Floor
New York, New York 10022
(212) 962-2900
mark@pincus-law.com
*Attorneys for Defendant Mark Zuckerberg*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

LEGAL STANDARD.............................................................................................4

ARGUMENT .........................................................................................................6

I.     THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM AGAINST MR. ZUCKERBERG WITH PREJUDICE ...........................................................6

     A.     Plaintiff Does Not and Cannot Plausibly Allege that Mr. Zuckerberg was Involved in the Alleged Lottery, Which Was a Scam Perpetrated by Unknown Third Parties ...................................................................6

     B.     Plaintiff Does Not and Cannot Allege that "Mr. Edwards" Had Authority to Contract on Mr. Zuckerberg's Behalf .............................9

CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Andela v. Admin. Ofc. of U.S. Cts.*,
  569 F. App'x 80 (2d Cir. 2014) ...................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................4, 5

*Driessen v. Natwest Bank PLC*,
  2013 WL 1273444 (D. Conn. Oct. 25, 2013), *aff'd* 580 F. App'x 32 (2d Cir. 2014) ......................................................................................................................6

*Goldfarb v. Solimine*,
  245 N.J. 326 (2021) ..................................................................................................9

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
  822 F.3d 125 (3d Cir. 2016) ......................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...................................................................................6

*Morrow v. Balaski*,
  719 F.3d 160 (3d Cir. 2013) .....................................................................................5

*Printing Mart-Morristown v. Sharp Elec. Corp.*,
  116 N.J. 739 (1989) ................................................................................................10

*Verify Smart v. Bank of Am., N.A.*,
  2021 WL 2549335 (D.N.J. June 17, 2021) ...............................................................9

*Young v. Johnson & Johnson*,
  525 F. App'x 179 (3d Cir. 2013) ...............................................................................6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................... passim

Defendant Mark Zuckerberg respectfully moves to dismiss Plaintiff's claim against him with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This case arises from an unsolicited text message that pro se Plaintiff Bettyann Jones received from a person claiming to be "Kevin Edwards," a purported "online claim agent" for the "National World Help Empowerment Company." In the text, "Mr. Edwards" stated that his organization was working with "the governing body of Facebook" and that Facebook CEO Mark Zuckerberg had selected her from among all Facebook users for a $100,000 prize. Although "Mr. Edwards" provided no proof that he was affiliated with a legitimate organization and Plaintiff never had any contact with anyone representing Facebook or Mr. Zuckerberg, Plaintiff paid a $200 "financial requirement" to claim her supposed winnings, receiving only a $32,500 check that her bank promptly rejected as fake. Plaintiff now sues "Mr. Edwards" and Mr. Zuckerberg for breach of contract and seeks the alleged prize.

Because Plaintiff is the obvious victim of a scam, her request that this Court compel Mr. Zuckerberg to award her $100,000 in prize money is misguided and should be rejected outright. Rule 12(b)(6) gives courts the power to dismiss claims where, even if the events alleged are assumed to have taken place, the court cannot draw a reasonable inference that *the defendant* had any actual involvement in them.

Here, even if Plaintiff's alleged interactions with "Mr. Edwards" and his associates took place, Plaintiff does not and cannot plausibly demonstrate that *Mr. Zuckerberg* had any involvement with this obvious scam. Plaintiff also does not and cannot demonstrate that "Mr. Edwards" had any authority to bind Mr. Zuckerberg to any contract. For these reasons, this Court should dismiss Plaintiff's claim against Mr. Zuckerberg with prejudice.

## BACKGROUND

In the summer of 2021, Plaintiff allegedly received an unsolicited text message from a person identifying himself as "Kevin Edwards," a purported "online claim agent" from an organization called the "National World Help Empowerment Program Company." (ECF No. 1-2, at 1.) This text message, which had many grammatical errors, essentially stated that "Mr. Edwards's" organization was administering a lottery drawn from among Facebook users, that the organization was acting in collaboration with "the governing body of Facebook," that winners need not even apply to be selected, and that Plaintiff had been one of 20 people selected among billions of Facebook users for a $100,000 prize by Facebook CEO Mark Zuckerberg. (*Id.* at 1-3.)

Although the text does not specify the source of the prize money, the text claimed that all Plaintiff had to do to claim her prize was to provide "Mr. Edwards" with her real name, address, date of birth, gender, marital status, email,

phone number and occupation. (*Id.* at 4.) Plaintiff does not claim she ever entered any contest for this alleged prize, nor does she claim that "Mr. Edwards" ever provided any indicia that he was affiliated with any legitimate organization. Despite these red flags, Plaintiff allegedly provided "Mr. Edwards" with the personal information he requested and $200.00 to satisfy the prize's purported "financial requirements." (ECF No. 1-1, at 2; ECF No. 1-2 at 4.) After receiving a response text that her information had been "forwarded to FedEx head office for them to process your shipping tracking code," Plaintiff allegedly received a $32,500.00 check addressed from "The Sherwin-Williams Company" which her bank rejected as fake. (ECF No. 1-1, at 2, 7-8.)

    During this time, Plaintiff also received an unsolicited text from a person calling himself "Tiege," who claimed to be a fellow $100,000 winner who had seen Plaintiff's name "among the winner list." (ECF No. 1-2, at 7.) "Tiege" assured Plaintiff that the lottery was "100% real and legitimate" and that she should text "609-365-0791" (the number from which "Mr. Edwards's" texts were sent) to claim her prize. (*Id.*) This message also was suspicious because "Tiege" had the same profile photo as "Mr. Edwards" and referred to the alleged awarding organization by a different name (the "Nation World Help Company"). (*See id.*) Although Plaintiff's allegations treat "Tiege" as a friendly party, "Tiege's" texts suggest that he was an associate of "Mr. Edwards" enlisted to reinforce Plaintiff's

3

confidence in the scam, showing a purported screenshot of the money in his account and making such statements as "[a]fter I paid them my prize was deposited into my account [in] just 24 hours," and "I took the certificate to bank with the money with no stress." (*Id.* at 8-9; ECF No. 1-1, at 3.)  "Tiege" even apparently claimed to have sent "Mr. Edwards" additional money to help Plaintiff claim here prize and, at one point, suggested that Plaintiff find out how much it would cost her to get her prize in cash. (ECF No. 1-1, at 2-8; ECF No. 1-2, at 27.)

Plaintiff does not claim that she had any contact with Mr. Zuckerberg or anyone else working for Facebook.  Despite this, Plaintiff has sued Mr. Zuckerberg for breach of contract, claiming she is entitled to the purported $100,000 prize.

## LEGAL STANDARD

A complaint that "fails to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the *defendant* is liable for the misconduct alleged." *Id.* at 678 (emphasis added).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and a court

cannot sustain a claim supported merely by a "formulaic recitation" of the elements of a claim or "'naked assertion[s]' devoid of 'further factual enhancement." *Id.* at 678, 681 (quoting *Twombly*, 550 U.S. at 557).

Although a court must accept the factual allegations in the complaint as true, the court need not accept "unsupported conclusions," "unwarranted inferences," or a "legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). Further, determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678.

A court deciding a Rule 12(b)(6) motion to dismiss may consider documents outside the complaint that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that the defendant attaches as an exhibit if the plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 135 n.7 (3d Cir. 2016).

Where a complaint fails to state a claim, a court should dismiss it with prejudice where amendment would be "futile," even if the plaintiff is *pro se*. *See Andela v. Admin. Ofc. of U.S. Cts.*, 569 F. App'x 80, 84 (2d Cir. 2014). Futility exists where "the complaint, as amended, would fail to state a claim upon which relief could be granted," such as when a plaintiff's claims are barred as a matter of

5

law. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Young v. Johnson & Johnson*, 525 F. App'x 179, 185 n.7 (3d Cir. 2013).

## ARGUMENT

### I.  THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM AGAINST MR. ZUCKERBERG WITH PREJUDICE

This Court should dismiss Plaintiff's claim against Mr. Zuckerberg with prejudice because Plaintiff does not and cannot plausibly allege that Mr. Zuckerberg had any involvement with the alleged "prize" at issue in this case. Additionally, Plaintiff does not and cannot allege that "Mr. Edwards" had authority to contract on Mr. Zuckerberg's behalf.

#### A.   Plaintiff Does Not and Cannot Plausibly Allege that Mr. Zuckerberg was Involved in the Alleged Lottery, Which Was a Scam Perpetrated by Unknown Third Parties

This Court should dismiss Plaintiff's claim against Mr. Zuckerberg with prejudice. Plaintiff cannot plausibly allege that Mr. Zuckerberg had any involvement with the lottery at issue in this case, which the Complaint's allegations establish was a scam perpetrated by unknown third parties. Rule 12(b)(6) gives courts the power to dismiss claims where, even if the events alleged are assumed to have taken place, the court cannot draw a reasonable inference that *the defendant* had any actual involvement in the events. *See Driessen v. Natwest Bank PLC*, 2013 WL 1273444, at *2 (D. Conn. Oct. 25, 2013), *aff'd* 580 F. App'x 32 (2d Cir. 2014)

In *Driessen*, plaintiff Rochelle Driessen received two unsolicited emails informing her that she had won cash prizes in two different contests she did not claim to have entered. *Id.* After responding to these emails, Ms. Driessen was connected to purported officials from NatWest Bank and Royal Bank of Scotland, who each sought a fee for the purported "transfer code" allegedly necessary for her to claim the prizes. *Id.* After refusing to pay the fee, Ms. Driessen sued the banks for the alleged prizes.

The *Driessen* court dismissed the claims against the banks under Rule 12(b)(6), holding that the facts alleged did "not give rise to a reasonable inference" that the banks "had any actual involvement in the communications referred to in the Complaint," and instead "clearly indicate[d]" that Ms. Driessen was the "target of a scam perpetrated by an unknown third party" trying to "pass itself off as NatWest Bank and Royal Bank of Scotland." *Id.* at *2. In reaching this conclusion, the *Driessen* court noted that the emails "were riddled with grammatical errors," that the email addresses did not use the domain names usually associated with the banks, and that Ms. Driessen "identified no legitimate reason why [she] would be entitled to the money promised" *Id.*

It is similarly implausible that Mr. Zuckerberg had any involvement with the misconduct Plaintiff alleges. Plaintiff does not claim she had any direct contact with Mr. Zuckerberg or even anyone claiming to work for him or Facebook.

7

Rather, Plaintiff has sued Mr. Zuckerberg based on a single unsolicited text from "Mr. Edwards" from the purported "National World Help Empowerment Program Company," where he claimed that his organization ran the alleged lottery in conjunction with the "governing body of Facebook" and that Mr. Zuckerberg had chosen the winners. (*See* ECF No. 1-2, at 2-3.)

As in *Driessen*, Plaintiff's allegations show that Plaintiff was the victim of a scam perpetrated by an unknown third party. Plaintiff's communications with Mr. Edwards and his associates raised multiple red flags suggesting the fraudulent nature of the lottery, including that (a) Plaintiff had been promised a large prize from a contest she did not enter; (b) Plaintiff received notice by text message rather than the Facebook platform, despite "Mr. Edwards's" claim that Facebook was involved in the lottery; (c) "Mr. Edwards's" initial text message was "riddled with grammatical errors;" (d) the "National World Help Empowerment Program Company" has no internet presence; (e) "Mr. Edwards" did not provide any indicia that he was affiliated with any legitimate organization; and that (f) "Teige" purported to be an ordinary prize winner, but had the same profile picture as "Mr. Edwards." The scam nature of the lottery became even more apparent when Plaintiff received a fake check for an incorrect amount drawn on a purported account of the Sherwin-Williams Company, a paint company unaffiliated with Facebook. (*See* ECF No. 1-1, at 8.)

Mr. Zuckerberg is not responsible for the acts of fraudsters who falsely claim a relationship with him or Facebook as part of a lottery scam. Because Plaintiff does not and cannot plausibly allege that Mr. Zuckerberg was involved in the misconduct alleged, this Court should dismiss him from this case with prejudice.

### B. Plaintiff Does Not and Cannot Allege that "Mr. Edwards" Had Authority to Contract on Mr. Zuckerberg's Behalf

Setting aside that "Mr. Edwards" was a fraudster, Plaintiff's breach of contract claim against Mr. Zuckerberg cannot survive because she does not and cannot allege that "Mr. Edwards" had authority to contract on Mr. Zuckerberg's behalf. A plaintiff cannot establish a breach of contract claim without alleging a valid contract between the parties. *Goldfarb v. Solimine*, 245 N.J. 326, 338 (2021). When a plaintiff claims to have contracted with defendant through defendant's agent, the agent's actual or apparent authority to bind the defendant is a threshold issue. *See Verify Smart v. Bank of Am., N.A.*, 2021 WL 2549335, at *8 (D.N.J. June 17, 2021). Actual authority exists when the agent reasonably believes he has authority based on the defendant's words or conduct. *See id.* Apparent authority exists when, even if the agent lacks actual authority, plaintiff reasonably believes the agent had authority based on the defendant's manifestations. *See id.*

Here, Plaintiff does not and cannot allege "Mr. Edwards" had actual authority to bind Mr. Zuckerberg to any contract. "Mr. Edwards" claimed he was

9

an agent for the "National World Help Empowerment Program Company" and never claimed to represent Mr. Zuckerberg personally. Even "Mr. Edwards's" claim that his organization was working "[i]n collaboration with the governing body of Facebook" cannot be construed as a claim to represent Mr. Zuckebrerg because a corporation is a distinct entity from its individual officers. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 761 (1989).

Plaintiff also cannot claim that "Mr. Edwards" had apparent authority because Plaintiff does not claim that she had any contact with Mr. Zuckerberg or that "Mr. Edwards" presented any indicia of authority that reasonably appeared to have been issued by Mr. Zuckerberg.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's claims against Mr. Zuckerberg with prejudice.

Dated:  December 13, 2021

__s/ Mark S. Pincus_____
Mark S. Pincus
PINCUS LAW LLC
444 Madison Avenue, 4th Floor
New York, New York 10022
(212) 962-2900
mark@pincus-law.com
*Attorneys for Defendant Mark Zuckerberg*